ORIGINAL

FILED

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

OCT – 1 2013

U.S. COURT OF
FEDERAL CLAIMS

NATIONAL AIR CARGO GROUP, INC.   )
d/b/a NATIONAL AIRLINES   )
5955 T G Lee Blvd. Ste. 500   )
Orlando, Florida 32822,   )
   )
   )
and   )
   )
COMMERCE AND INDUSTRY   )
INSURANCE COMPANY   )
175 Water Street, 18th Floor   )   13-764 C
New York, New York 10038   )
on its own behalf and on behalf of insurers   )   Case No. _____
subscribing to Policy Number   )
AI 001857931-06   )
   )
   )
               Plaintiffs   )
   )
v.   )
   )
THE UNITED STATES OF AMERICA   )
Federal Aviation Administration   )
800 Independence Avenue, S.W.   )
Washington, D.C. 20591,   )
   )
   )
               Defendant.

**COMPLAINT**

National Air Cargo Group, Inc. d/b/a National Airlines, and Commerce and Industry

Insurance Company, file this Complaint against the United States of America for the following

reasons:

**INTRODUCTORY STATEMENT**

1.      The purpose of this action is to obtain payment in full of a claim under a Policy of

Insurance, Non Premium Hull & Liability War Risk Non-PR-H&L-9.28.11-MUA, issued to

National Air Cargo Group, Inc. d/b/a National Airlines ("National Air Cargo") by the United

States of America, represented by the Administrator of the Federal Aviation Administration

(FAA), acting for the Secretary of Transportation. A copy of the Policy of Insurance, Non

Premium Hull & Liability War Risk Non-PR-H&L-9.28.11-MUA, is attached hereto as **Exhibit**

**A** and is incorporated by reference herein.

      2.      The claims at issue herein arise from the crash of National Air Cargo aircraft

N949CA ("the accident aircraft") on April 29, 2013, at Bagram Air Base, Afghanistan. At the

time of the crash, the accident aircraft was transporting military vehicles and military cargo in

support of a contract between National Air Cargo and United States Transportation Command

(USTRANSCOM). The crash resulted in the total loss of the accident aircraft, as well as the

deaths of the seven individuals on board the flight.

**PARTIES**

      3.      Plaintiff National Air Cargo Group, Inc., is a corporation organized under the

laws of the State of Florida, with a principal place of business in Orlando, Florida.

      4.      Plaintiff Commerce and Industry Insurance Company is a corporation organized

under the laws of the State of New York, with a principal place of business in New York, New

York.

      5.      Defendant is the United States of America, acting by and through and represented

by the Administrator of the Federal Aviation Administration, acting for the Secretary of

Transportation.

**JURISDICTION AND VENUE**

      6.      The Court has jurisdiction over this action pursuant to 49 U.S.C. § 44309(a),

which permits a civil action against the United States when a loss insured under Title 49, United

States Code, Chapter 443, is in dispute, and 28 U.S.C. § 2201 et seq.

7.    Venue is proper in this judicial district pursuant to 49 U.S.C. § 44309(b), which permits a civil action under 49 U.S.C. § 44309(a) to be brought in the judicial district for the District of Columbia.

## BACKGROUND

### The DOD Multimodal Contract

8.    At the time of the accident on April 29, 2013, the accident aircraft was being used to perform services pursuant to United States Transportation Command Multimodal Transportation Contract, Solicitation Number HTC711-12-R-R003, Contract Number HTC711-12-D-R010 ("the DOD Multimodal Contract"). The DOD Multimodal Contract is a Department of Defense Contract.

9.    At the time of the accident on April 29, 2013, National Air Cargo was a contractor pursuant to the DOD Multimodal Contract. The DOD Multimodal Contract was conditioned upon the contractor being a Department of Defense approved carrier not in a suspended non-use status (carrier in good standing) participating in the Civil Reserve Air Fleet (CRAF) or Voluntary Intermodal Sealift Agreement (VISA) throughout the performance of the DOD Multimodal Contract. For CRAF, the contractor was required to be a U.S. registered air carrier operating under Federal Aviation Regulations, Part 121, and possessing a current certificate issued by the FAA pursuant to Federal Aviation Regulations, Part 121.

### The CRAF Contract

10.    At the time of the accident on April 29, 2013, National Air Cargo was a CRAF participant in the Commercial Charter Airlift Services Contract, Solicitation Number HTC711-12-R-C004, Contract Award Number HTC711-13-D-CC08 ("the CRAF Contract").

11.    The CRAF Contract, at Part I, The Schedule, Section H – Special Contract Requirements, subsection H-5, Chapter 443 Non-Premium War Risk Hull and Liability

3

Insurance – International ("subsection H-5"), requires that "[t]he Contractor shall apply for

Chapter 443 Non-Premium Aviation Insurance from the FAA . . . . " The CRAF Contract, at

subsection H-5, also states that "[t]he Contractor shall promptly notify the FAA of any tail

number additions, removals, and/or changes in the aircraft committed to CRAF to ensure that the

Contractor is covered by Chapter 443 Non-Premium Aviation Insurance without delay while

operating CRAF-like missions to which Non-Premium 443 applies or in the event of CRAF

activation."

### The FAA Non-Premium War Risk Hull and Liability Policy

12.     On September 28, 2011, the United States, represented by the Administrator of

Federal Aviation Administration, acting for the Secretary of Transportation, issued to National

Air Cargo a Policy of Insurance, Non Premium Hull & Liability War Risk Non-PR-H&L-

9.28.11-MUA ("Policy").

13.     The Policy, at Section I: Hull Policy ("Hull Policy"), provides, without premium,

aircraft physical damage insurance for the aircraft described in the "Schedule of Aircraft Limits

of Liability" for the account of National Air Cargo for risks associated with the operation of such

aircraft by National Air Cargo under a Department of Defense ("DOD") Contract. The accident

aircraft, N949CA, is listed in the "Fleet Schedule Report – Non-Premium Insurance Program"

attached to the Policy.

14.     Subject to the terms, conditions, and exclusions of the Policy, the Hull Policy

"covers all physical loss or damage to the aircraft described and set forth in the Schedule,

including engines, navigational instruments, parts and equipment installed on said aircraft while

being operated by the Insured anywhere in the world under a DOD contract including while the

Insured's aircraft have been activated for the Civil Reserve Air Fleet (CRAF), provided such loss

or damage results from a War Risk Occurrence." **Exhibit A**, Section I, Hull Policy, at III. Conditions, subsection A.

15.     Under the Hull Policy, "War Risk Occurrences" are defined, <u>inter alia</u>, as "any loss or damage directly or indirectly arising from, or occasioned by, or happening through or in consequences of : (1) War (whether declared or not) (including war between Great Powers), invasion, acts of foreign enemies, warlike hostilities, civil war, rebellion, revolution, insurrection, martial law, exercise of military or usurped power, or any attempt at usurpation of power." Exhibit A, Section I, Hull Policy, at III. Conditions, subsection A.1. The April 29, 2013, accident involving aircraft N949CA constituted a "War Risk Occurrence" as defined in the Hull Policy.

16.     The Hull Policy provides that "[t]he Insurer will pay, subject to the terms, conditions, and exclusions of this Policy: (1) in respect to total loss, the Sum Insured[.]" Exhibit A, Section I, Hull Policy, at III. Conditions, subsection A.2.

17.     Pursuant to the Policy, the Sum Insured with respect to the accident aircraft, N949CA, was $40,000,000. **Exhibit A**, Fleet Schedule Report – Non-Premium Insurance Program, attached to the Policy.

**National Air Cargo's Notice of Loss**

18.     The Hull Policy provides that in the event of any War Risk Occurrence which may result in loss, damage, or expense for which the Insurer may be liable, prompt notice thereof, on being known to the Insured, shall be given by the Insured to the Administrator of the Federal Aviation Administration. **Exhibit A**, Section I, Hull Policy, at IV. Prompt Notice of Loss, subsection A.

19.     The Policy requires that the Federal Aviation Administration shall make prompt payment in full of any claim covered under the Policy after confirmation of loss. **Exhibit A,** Section I, Hull Policy, at IX. Payment of Claims, subsection A.

**The FAA's Denial of Claim**

20.     By letters dated May 30, 2013, and June 6, 2013, National Air Cargo provided timely notice of its FAA Non-Premium War Risk claim arising from the crash of aircraft N949CA at Bagram Air Base, Afghanistan, on April 29, 2013.

21.     On June 19, 2013, the FAA denied National Air Cargo's claim, on the basis that Hull and Liability Policy, NON-PR-H&L-9.28.11-MUA, was not applicable to the operation being performed by aircraft N949CA at the time of the incident giving rise to National Air Cargo's claim. **Exhibit B,** Letter dated June 19, 2013, from Mr. Wayne T. Heibeck, Manager, Management Staff, FAA Office of Policy, International Affairs, and Environment to Mr. Glen Joerger, President, National Airlines.

22.     National Air Cargo has satisfied all terms and conditions of Hull and Liability Policy, NON-PR-H&L-9.28.11-MUA, including, without limitation, notice and tender of claims, and is entitled to the full benefit of said insurance policy.

**The Commerce and Industry Insurance Company Policy**

23.     National Air Cargo was a named insured under Commerce and Industry Insurance Company Policy Number AI 001857931-06, with a Policy Period from June 1, 2012 to June 1, 2013 (hereinafter "Commerce and Industry Policy"). The Commerce and Industry Policy provided physical damage coverage for National Air Cargo aircraft N949CA on April 29, 2013, the date of the accident at Bagram Air Base, Afghanistan. The Schedule of Aircraft and Insured

Values contained in the Commerce and Industry Policy listed an "Insured Value" of $42,150,000 for aircraft N949CA .

24.    Following the total loss of aircraft N949CA as a result of the April 29, 2013, crash at Bagram Air Base, Afghanistan, Commerce and Industry Insurance Company, pursuant to the terms of the Commerce and Industry Policy, for itself as lead insurer and on behalf of other insurers on the risk, paid, without prejudice, to National Air Cargo and its lenders $42,153,003 in settlement of National Air Cargo's claim for physical damage to the accident aircraft.

25.    Pursuant to the terms of the Commerce and Industry Policy, Commerce and Industry Insurance Company is subrogated in whole or in part to National Air Cargo's rights of recovery against the United States.

**COUNT I**

**BREACH OF CONTRACT – National Air Cargo**

26.    National Air Cargo incorporates the allegations contained in paragraphs 1 through 25, inclusive, as though fully set forth herein.

27.    National Air Cargo timely and properly notified the Federal Aviation Administration of the total loss of aircraft N949CA as a result of the accident on April 29, 2013, at Bagram Air Base, Afghanistan.

28.    The total loss of aircraft N949CA as a result of the accident on April 29, 2013, at Bagram Air Base, Afghanistan, is a loss covered by the Hull Policy.

29.    The Federal Aviation Administration has failed and refused to fully reimburse National Air Cargo for the aircraft hull loss sustained as a result of the accident on April 29, 2013, at Bagram Air Base, Afghanistan, and/or has failed to acknowledge its insuring agreement with National Air Cargo.

30.     By its failure to fully reimburse National Air Cargo for the aircraft hull loss sustained as a result of the accident on April 29, 2013, at Bagram Air Base, Afghanistan, or its failure to acknowledge its insuring agreement with National Air Cargo, the Federal Aviation Administration has breached its contract of insurance with National Air Cargo.

31.     As a direct and proximate result of the Federal Aviation Administration's breaches of contract, National Air Cargo has suffered, and continues to suffer, financial loss and other damages, in an amount to be proven at trial.

## COUNT II

### BREACH OF CONTRACT – Commerce and Industry Insurance Company

32.     Commerce and Industry Insurance Company incorporates the allegations contained in paragraphs 1 through 31, inclusive, as though fully set forth herein.

33.     National Air Cargo timely and properly notified the Federal Aviation Administration of the total loss of aircraft N949CA as a result of the accident on April 29, 2013, at Bagram Air Base, Afghanistan.

34.     The Federal Aviation Administration has failed and refused to fully reimburse National Air Cargo for the aircraft hull loss sustained as a result of the accident on April 29, 2013, at Bagram Air Base, Afghanistan, and/or has failed to acknowledge its insuring agreement with National Air Cargo.

35.     By its failure to fully reimburse National Air Cargo for the aircraft hull loss sustained as a result of the accident on April 29, 2013, at Bagram Air Base, Afghanistan, or its failure to acknowledge its insuring agreement with National Air Cargo, the Federal Aviation Administration has breached its contract of insurance with National Air Cargo.

36.     Pursuant to the terms of the Commerce and Industry Insurance Policy, Commerce and Industry Insurance Company, for itself as lead insurer and on behalf of other insurers on the risk, paid, without prejudice, to National Air Cargo and its lenders $42,153,003 in settlement of National Air Cargo's claim for physical damage to the accident aircraft.

37.     Pursuant to the terms of the Commerce and Industry Policy, Commerce and Industry Insurance Company is subrogated in whole or in part to National Air Cargo's rights of recovery against the United States.

38.     As a direct and proximate result of the Federal Aviation Administration's breaches of contract, Commerce and Industry Insurance Company has suffered, and continues to suffer, financial loss and other damages, in an amount to be proven at trial.

## COUNT III

## DECLARATORY JUDGMENT

39.     National Air Cargo and Commerce and Industry Insurance Company incorporate the allegations contained in paragraph 1 through 38, inclusive, as though fully set forth herein.

40.     National Air Cargo and Commerce and Industry Insurance Company seek a declaration that the Federal Aviation Administration, pursuant to the terms of its insurance contract with National Air Cargo, is obligated to provide insurance benefits to National Air Cargo for the aircraft hull loss sustained by National Air Cargo as a result of the accident on April 29, 2013, at Bagram Air Base, Afghanistan.

41.     An actual controversy exists between National Air Cargo and Commerce and Industry Insurance Company and the Federal Aviation Administration regarding the rights and obligations of the parties.

**PRAYER FOR RELIEF**

WHEREFORE, National Air Cargo and Commerce and Industry Insurance

Company respectfully demand judgment against the Federal Aviation Administration as

follows:

(A)    Money damages in an amount to be determined at trial not exceeding

$45,000,000.00, including costs for wreckage recovery and site remediation;

(B)    Appropriate interest, attorney's fees, and costs;

(C)    A declaration of the Federal Aviation Administration's obligations with

respect to the payment of insurance benefits to National Air Cargo; and

(D)    Such other and further relief as this Court deems just and proper.


Respectfully submitted,

Jessica C. Abrahams, Esq.
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C.  20006
Tel:  202.496.7204
Fax: 202.496.7756


Date: October 1, 2013

Of Counsel

Mark A. Dombroff, Esq.
James A. Eastwood, Esq.
McKenna Long & Aldridge LLP
1676 International Drive
Penthouse
McLean, VA  22102
Tel: 703.336.8800
Fax: 703.336.8750

Of Counsel

Mark A. Dombroff, Esq.
James A. Eastwood, Esq.
McKenna Long & Aldridge LLP
1676 InternationalDrive
Penthouse
McLean, VA  22102
Tel: 703.336.8800
Fax: 703.336.8750